DAGGETT, *Appellant,*

*v.*

WAGNER MINING EQUIPMENT, INC., *Respondent.*

(No. 422 456, CA 5737)

550 P2d 767

*Allen T. Murphy, Jr.,* Portland, argued the cause for appellant. With him on the brief were Richardson, Murphy & Nelson, Portland.

*Merlin L. Miller,* Portland, argued the cause and filed the brief for respondent.

Before Schwab, Chief Judge, and Langtry and Lee, Judges.

LEE, J.

## LEE, J.

Claimant appeals from a judgment of the circuit court which affirmed an award of 50 percent of the maximum for permanent partial disability (PPD) by the Workmen's Compensation Board (Board). The referee had increased the award from 15 percent to 50 percent PPD.

Claimant, a diesel mechanic in his early 60's, was injured on September 1, 1972 when a 250 pound hood of the engine compartment of a truck fell across his head and back. His first medical treatment was on September 5, 1972 with diagnosis of "contusion and myositis [inflammation] of the neck and shoulder." After conservative treatments brought no improvement, claimant was seen by a series of medical specialists.

A comprehensive medical evaluation was made on December 18, 1972 by Dr. James Mason, Medical Examiner for the Disability Prevention Division of the Board, who found:

"a. Cervico-dorsal spine strain, questionable in degree;

"b. Clinically, there is no evidence of herniated intervertebral disc lesion or nerve root compression.

"c. There is a gross conversion-reaction, with depression. Probably, this emotional reaction is the basis of all of his symptoms and complaints.

"d. Probably, this patient has a drug habituation. Certainly, he has over-usage of codeine preparations."

Three medical doctors (a neurologist and two orthopedic surgeons) at the Board's Back Evaluation Clinic of the Disability Prevention Division examined claimant on January 24, 1973. Their diagnosis was "conversion hysteria" and they concluded their report with the following recommendation:

"* * * Continue psychiatric counselling. The psychiatric care can be continued as an out-patient. The loss of function due to the injury is considered mild. Discharged from the DPD [Disability Prevention Division]. We do not see any reason why the patient could not return to

his former occupation. Claim closure at the discretion of the attending physician."

Claimant has only slight physical impairment as a result of the injury. The rest of his complaints relate to a psychological disability. Our primary focus must therefore be on the extent to which claimant is malingering.

Dr. Hickman, a clinical psychologist, examined the claimant at various times from February 12 through March 9, 1973 and counselled with the claimant in 12 sessions from December 22, 1972 through February 28, 1973. Dr. Hickman administered nine psychological tests and conducted a comprehensive diagnostic interview. In a March 12, 1973 report he found that:

"* * * The psychological evaluation in the personality area gives clear cut evidence of significant psychopathology relating directly to his reported symptoms. The patient is excessively overfocused and preoccupied with physical complaints. * * * The patient is classified as experiencing a conversion reaction of moderately severe magnitude and many of his symptoms are in all probability a result of conversion hysteria. * * * This psychopathology is judged to have predated the patient's injury but has been aggravated to at least a moderate degree by his injury. * * * This disability is probably permanent and it is very unlikely that this patient will ever return to any type of full time gainful employment.

"The prognosis for return of this patient to gainful employment is very poor. He will probably never work again."

After 11 additional counselling sessions (from May 18, 1973 through September 21, 1973), Dr. Hickman made a Final Report in which he stated that:

"Progress has been extremely slow of late and we cannot see any appreciable change in the patient in the last couple of months. * * * It is our opinion that Mr. Daggett will probably not return to gainful employment and certainly he has no economic necessity to do so."

The referee, after finding a "mild organic physical impairment resulting from the injury," stated that:

> "Although there is substantial evidence of conversion hysteria, there is also evidence of sufficient financial security to motivate retirement and evidence of conscious manipulation through distortion and exaggeration. * * *"

■■ The referee concluded that "* * * the loss of wage earning capacity attributable to the injury is 50%." We agree. As we stated in *Etchison v. SAIF,* 8 Or App 395, 400-401, 494 P2d 455 (1972):

> "* * * The opinion of the hearing officer, although not binding, should be given considerable weight on matters involving the credibility of witnesses who have testified before him. * * *"

This rule is especially applicable in the instant case where the major issue is motivation and volition of the claimant.

Affirmed.